UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

KWOK-CHING YU,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/23/2020__

90 Cr. 47-6 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Kwok-Ching Yu, a prisoner serving his sentence at FCI Otisville, moves for a reduction of his term of imprisonment under the federal compassionate release statute, codified at 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 pandemic.  Def. Mem., ECF No. 212.  For the reasons stated below, Yu's motion is GRANTED.

## BACKGROUND

During the late 1980s, Yu, along with others, was involved in a scheme to import heroin into the United States.  Def. Ex. D ¶¶ 47–56, ECF No. 212-4.  They shipped heroin from China to New York, concealed in soy sauce boxes.  *Id*.  The heroin was then sold and distributed in New York.  *Id*. ¶¶ 57–62.  Upon information from a confidential informant, the Drug Enforcement Administration intercepted a shipment and arrested the conspirators present in the United States.  *Id*. ¶¶ 92, 97, 100.  On February 1, 1990, the Government brought charges against Yu, and he was arrested in Hong Kong on November 6, 1990.[1]  *Id*. ¶¶ 1, 99.  Yu has been incarcerated ever since.

On December 4, 1990, the Government filed a third superseding indictment, charging Yu with various crimes related to the conspiracy, including (1) one count of conspiracy to distribute

---

[1] Although Yu's presentence report includes two different dates of arrest, November 5 and 7, 1990, the Court will use November 6, 1990 as the date of his arrest, as represented by the BOP in its Sentence Monitoring Computation Data.  *See* Def. Ex. E, ECF No. 212-5.

heroin; (2) one count of conspiracy to import heroin; (3) one count of being the principal

administrator in a continuing criminal enterprise; (4) two counts of importing heroin; and (5) two

counts of possession with intent to distribute heroin. *Id.* ¶¶ 19–28; Indictment, 12/4/1990 Docket

Entry.

Yu's April 1992 trial lasted seventeen days, and ended in a mistrial when the jury could

not reach a unanimous verdict. 4/07/1992–4/23/1992 Docket Entries. In December 1992, Yu

was retried, and convicted on all counts. Jury Verdict, 12/15/1992 Docket Entry.

In November 1993, The Honorable Robert W. Sweet reluctantly sentenced Yu to a

mandatory term of life imprisonment, which was triggered by his conviction as a principal

administrator in a continuing criminal enterprise. *United States v. Yu*, No. 90 Cr. 47, 1993 WL

497985, at *1 (S.D.N.Y. Nov. 30, 1990). Judge Sweet issued a sentencing opinion in which he

expressed serious reservations about the harsh sentence that he was mandated to impose by the

sentencing laws in effect at the time. *Id.* ("Yu does not face me for sentencing but rather the

unseen Members of Congress."). He emphasized that such Congressional decrees imposed

"arbitrarily without any knowledge" about Yu's circumstances, age, or status as a first offender,

raised grave concerns about the "efficacy, justice, and constitutionality of mandatory minimum

sentences." *Id.* at *1–3. He implored Congress to amend the provisions governing mandatory

minimum sentences to permit some consideration of individual defendants. *Id.* at *2.

Nonetheless, he felt bound by his oath to impose the sentence. *Id.* at *1.

In 1996, Yu passed contact information for potential heroin purchasers to one of his

visitors in prison, who later began cooperating with the Government. Def. Ex. I, ECF No. 212-9;

*United States v. Yu*, 285 F.3d 192, 194–95 (2d Cir. 2002). In 2000, Yu was charged and later

pleaded guilty to three counts of conspiracy to distribute heroin. *Id.* at 195. Twice, his guilty

plea was overturned.  *Id.* at 197–98; *United States v. Yu*, 150 Fed. App'x 82, 84 (2d Cir. 2005).

Ultimately, Yu pleaded guilty to a third information charging him with one count of conspiracy

to distribute heroin, and he was sentenced to twenty years' imprisonment, to be served

concurrently with his prior life sentence.  Def. Ex. J, ECF No. 212-10.  Yu has served that

sentence in its entirety and, therefore, does not seek modification of that sentence under the

compassionate release statute.  Def. Mem. at 8.

Presently, Yu has served over thirty years—and almost half his life—in prison.  During

this time, Yu has unsuccessfully sought post-conviction relief.[2]  On June 11, 2020, Yu wrote to

the Court, requesting counsel to assist him in filing a motion for compassionate release due to the

COVID-19 pandemic.  ECF No. 208.   He expressed concerns about his health and age.  *Id*. at 1.

The Court appointed CJA counsel.

At almost seventy years old, his advanced age, along with hypertension, high cholesterol,

sinus issues, and sleep apnea, place him at serious risk should he become infected with COVID-

19.  In fact, the Centers for Disease Control and Prevention (the "CDC") has found that COVID-

19 is particularly devastating to individuals in Yu's age group, making him ninety times more

likely to die from COVID-19 and five times more likely to be hospitalized, than individuals aged

18 to 29.  *See Coronavirus Disease 2019 (COVID-19): COVID-19 Hospitalization and Death by

Age*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-

discovery/hospitalization-death-by-age.html (last updated August 18, 2020).  Moreover, the

CDC has recognized that individuals with hypertension might be at an increased risk for severe

---

[2] In 2016, Yu moved for a reduction of sentence under 18 U.S.C. § 3582, which was denied.  *United States v. Yu*,
No. 90 Cr. 47, 2018 WL 1721759, at *1 (S.D.N.Y. Apr. 9, 2018).  Most recently, Yu brought a pro se motion for
writ of *audita querela* before the Honorable Lewis Liman, which was also denied.  *Yu v. United States*, 19 Civ.
6666, 2020 WL 1243781, at *3–4 (S.D.N.Y. Mar. 16, 2020).  Separately, in 2017, Yu petitioned the BOP *pro se* for
compassionate release, which the BOP denied.  Def. Ex. G, ECF No. 212-7.

illness from the virus.  *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Nov. 2, 2020).  In addition, some evidence shows that sleep apnea may also be a risk factor.  Tori Rodriguez, *Obstructive Sleep Apnea as a Potential Risk Factor for COVID-19: Expert Interview*, Pulmonology Advisor (Aug. 12, 2020), https://www.pulmonologyadvisor.com/home/topics/obstructive-sleep-apnea-osa/obstructive-sleep-apnea-may-increase-risk-for-coronavirus-disease-2019/.

On August 3, 2020, Yu submitted a request for compassionate release to FCI Otisville's warden, who denied the request on October 14, 2020.  Def. Ex. W, ECF No. 212-23; Def Mem. at 17.  On November 2, 2020, Yu moved this Court to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic.  ECF No. 211.

## DISCUSSION

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i)     extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Yu must meet

the exhaustion requirement and demonstrate that "extraordinary and compelling reasons"

warrant a reduction of his sentence.  The Court should also consider the factors listed in

18 U.S.C. § 3553(a), which, as applicable here, include:

> (1) the nature and circumstances of the offense and the history and characteristics of the
> defendant; [and]
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the
>> law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct; [and]
>> (C) to protect the public from further crimes of the defendant
>> (D) to provide the defendant with needed educational or vocational
>> training, medical care, or other correctional treatment in the most effective
>> manner . . . .

18 U.S.C. § 3553(a).

The parties do not dispute that Yu has exhausted his administrative remedies.  On August

3, 2020, Yu submitted a request for compassionate release to the Warden of Otisville.  Def. Ex.

W.  The Warden failed to respond within thirty days.  Def Mem. at 17; Gov. Letter at 3, ECF No.

214.  On October 14, 2020, Yu received notice that the BOP denied his request.  *Id.*  Therefore,

the Court need only address whether Yu has stated an extraordinary and compelling reason for

release, and whether that reason is outweighed by the § 3553(a) factors.

## I.    Extraordinary and Compelling Reasons for Release

The Court finds that Yu has set forth "extraordinary and compelling reasons" to modify

his sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  Yu's advanced age, medical conditions, and the risk

in FCI Otisville posed by COVID-19, combined with the evidence of his rehabilitation, clears the

high bar set by § 3582(c)(1)(A)(i).

The United States Sentencing Commission has defined "extraordinary and compelling

reasons" at U.S.S.G. § 1B1.13, cmt. n.1.  *See United States v. Ebbers*, No. 02 Cr. 11443, 2020

WL 91399, at *4–5 (S.D.N.Y. Jan. 8, 2020).  The definition, as relevant, states that extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).  The Second Circuit recently clarified, however, that where, as here, a motion for compassionate release is brought by a defendant, rather than by the BOP, Guideline § 1B1.13 is "not applicable."  *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) (internal quotation marks omitted).  In *Brooker*, the Second Circuit recognized that rehabilitation alone may not be considered an "extraordinary and compelling reason," but it can "interact" with the COVID-19 pandemic to create extraordinary and compelling reasons for a reduction of sentence.  *Id*. at 237–38; *see also United States v. Rodriguez*, No. 00 Cr. 761, 2020 WL 5810161, at *4 (S.D.N.Y. Sept. 30, 2020).  Accordingly, this Court is empowered to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and is not bound by Guideline § 1B1.13.  *Brooker*, 976 F.3d at 237.

The Court rejects the Government's contention that Yu has failed to show any individualized risk due to COVID-19.  Gov. Letter at 4.  To the contrary, the CDC has found that the risk for severe illness from COVID-19 increases with age, and identifies older adults, like Yu, as more likely than others to become severely ill.  *Coronavirus Disease 2019 (COVID-19)*: *People at Increased Risk*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last updated Sept. 11, 2020).  In fact, eight out of ten COVID-19-related deaths in the United States have been among adults in Yu's age group of 65 years and older.  *Coronavirus Disease 2019 (COVID-19): Older Adults*, CDC,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last
updated Sept. 11, 2020).  And, as discussed above, the CDC has found that the risk of
hospitalization from COVID-19 for someone in Yu's age group is five times higher, and the risk
of death is ninety times higher, than for someone between 18 and 29 years old.  *Coronavirus
Disease 2019 (COVID-19): COVID-19 Hospitalization and Death by Age*, *supra*.

    Yu's vulnerability to COVID-19 due to his age is compounded by his health conditions.
According to the CDC, individuals with hypertension, like Yu, may be at an increased risk for
severe illness from COVID-19.  *See Coronavirus Disease 2019 (COVID-19): People with
Certain Medical Conditions*, *supra*.  As the CDC acknowledges, COVID-19 is a new disease,
and "there are limited data and information about the impact of many underlying medical
conditions and whether they increase the risk for severe illness from COVID-19." *Id.*
Nonetheless, studies show that obstructive sleep apnea may represent another variable
contributing to increased risk related to COVID-19.  Rodriguez, *supra* ("In [two] small studies of
individuals admitted to the ICU with confirmed COVID-19, researchers reported that
[obstructive sleep apnea] was present in 21.0% and 28.6% of patients, respectively.").  Thus,
taken together, Yu's advanced age and health conditions are "extraordinary and compelling
reasons" that warrant a reduction of his sentence.

    Other courts in this district have granted applications for sentence reduction pursuant to
§ 3582(c) under similar circumstances, finding that the combination of advanced age, underlying
medical conditions, and incarceration can "compound[] the risk COVID-19 poses to [a
defendant], placing [the defendant] in particularly grave danger." *United States v. Gross*, No. 15
Cr. 769, 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (deferring a decision on
compassionate release of an incarcerated person who "suffers from high blood pressure and sleep

apnea," on other grounds, and later granting the motion, *United States v. Gross*, No. 15 Cr. 769, ECF No. 771) (internal citation and quotation marks omitted); *see also United States v. Zoquier-Solano*, No. 13 Cr. 772, 2020 WL 6193859, at *2 (S.D.N.Y. Aug. 10, 2020) (finding "extraordinary and compelling reasons" for reducing the sentence of a 42-year old defendant who suffers from hypertension, hyperlipidemia, and borderline obesity); *United States v. Scparta*, No. 18 Cr. 578, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release to an incarcerated person who "suffers from hypertension, sleep apnea, high blood pressure, and high cholesterol"); *United States v. Zukerman,* 451 F. Supp. 3d 329, 335–36 (S.D.N.Y. 2020) (granting compassionate release based, in part, on defendant's advanced age of 75 years old and hypertension).  The same justifications apply here.

In addition, as this Court has already found, inmates at FCI Otisville live in close quarters, "making it difficult for [Yu] to protect himself from the spread of this dangerous and highly contagious virus." *Zukerman*, 451 F. Supp. 3d at 335.  This is particularly true as the virus continues to surge in the United States, and specifically within BOP facilities.  As of the date of this order, there are 3,624 federal inmates and 1,225 BOP staff with confirmed positive test results.  BOP, *COVID-19*, https://www.bop.gov/coronavirus/ (last visited November 23, 2020).  This presents a significant increase from the numbers reported by Yu in his motion just 21 days ago.  *See* Def. Mem. at 12 ("[T]here are nearly 1,800 active cases among inmates . . . . [T]here are also 911 cases among BOP staff.").

In addition, Yu has taken significant steps to rehabilitate himself, which weigh in favor of finding "extraordinary and compelling reasons."  *Rodriguez*, 2020 WL 5810161, at *4 ("[T]he overwhelming evidence of [defendant's] total rehabilitation weighs strongly in favor of a finding of extraordinary and compelling reasons."); *see also United States v. Torres*, 464 F. Supp. 3d

651, 661 (S.D.N.Y. 2020) ("[T]he Court holds that rehabilitation is relevant to whether there are

extraordinary and compelling reasons for a sentence reduction."). Yu has spent nearly three

decades trying to better himself, despite his life sentence, and "without any tangible incentive

other than self-improvement." *United States v. Millan*, No. 91 Cr. 685, 2020 WL 1674058, at *9

(S.D.N.Y. Apr. 6, 2020).  Indeed, the Government agrees that Yu's rehabilitation is

commendable.  Gov. Letter at 5.  Yu has taken GED classes, and other courses spanning a

variety of topics, such as horticulture and landscape, ESL, computer literacy, glass painting, and

safety and sanitation.  Def. Ex. K, ECF No. 212-11.  He has received certificates of completion

in several programs, including drug education, typing, and computer literacy.  Def. Ex. M, ECF

No. 212-13.  He has held steady jobs for several years, and one of his supervisors represents that

Yu "always gives 100%," that he has been a great asset to the recreation department at FCI

Otisville, and that he is remorseful about the impact that his crime had on his community.  Def.

Ex. N, ECF No. 212-14.  His fellow inmates refer to him as a "model inmate" and praise his

character and work ethic.  Def. Ex. O, ECF No. 212-15.  One inmate, Mark A. Shapiro, writes,

"[i]n my 14 years of incarceration few and far between have been the examples of such character

and integrity as Mr. Yu."  *Id*.  Another inmate, Suresh Kumar states, "[i]n spite of his long

sentence, I have found that Yu tries very hard to better himself and always has a positive outlook

towards life." Def. Ex. Q, ECF No. 212-17.

The dire risks posed by the COVID-19 pandemic due to his advanced age and health

conditions, along with his rehabilitation, weigh in favor of finding extraordinary and compelling

reasons justifying a reduction of sentence.

II.     Section 3553(a) Factors

The Court also finds that the factors listed in § 3553(a) do not outweigh the extraordinary reasons justifying a modification of sentence.

Here, Judge Sweet, with close knowledge of the facts and circumstances surrounding Yu's case, expressed serious misgiving about the imposition of a mandatory life sentence.  As Judge Sweet made clear, he could not consider the "history and characteristics of the defendant" when he imposed the sentence.  § 3553(a)(1); *Yu*, 1993 WL 497985, at *1.  He expressed that, were it not for his oath to comply with the holdings of the Supreme Court, he would "conclude that the imposition of a life sentence without the consideration of the individual does not constitute due process."  *Yu*, 1993 WL 497985, at *1.

During his prison stay, Yu has taken remarkable steps to rehabilitate himself.  The Supreme Court has noted that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).  Yu's clean disciplinary record for the last eight years, and the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community.  Def. Ex. K.  Moreover, Yu has a strong family support system that will help him reintegrate into society.  Def. Mem. at 10.  He intends to live with his sister, and his cousin has offered to employ him.  *Id*.; Def. Ex. R, ECF No. 212-18.

Accordingly, the § 3553(a) factors do not outweigh the extraordinary and compelling reasons justifying release.

**CONCLUSION**

For the reasons stated above, Yu's motion for a reduction of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) is GRANTED.  Yu's sentence of imprisonment is modified to time served.  Upon his release, Yu shall self-quarantine at home for a 14-day period. The BOP is directed to release Yu immediately.

The Clerk of Court is directed to terminate the motion at ECF No. 211.

SO ORDERED.

Dated: November 23, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge